



# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

March 9, 1939

Hon. J. B. Engledow
Assistant County Attorney,
Limestone County
Groesbeck, Texas

Dear Sir:

Opinion No. O-345
Re: Minimum and maximum salaries
of District Clerk under Sal-
ary Bill

This is to acknowledge receipt of your letter and
brief of February 8th. In your communication you seek our
interpretation of the Officer's Salary Bill with a particu-
lar request for an opinion as to the minimum and maximum
salary payable to the District Clerk of Limestone County.

You point out in your letter that Limestone County
has a population of 39,466 and a property valuation of
$17,289,770.00. This would bring your county within the
provisions of Section 13 of Article 3912e, Vernon's Annotated
Civil Statutes. The section indicated reads as follows:

"Sec. 13. The Commissioners' Court in
counties having a population of twenty thou-
sand (20,000) inhabitants or more, and less
than one hundred and ninety thousand (190,000)
inhabitants according to the last preceding
Federal Census, is hereby authorized and it
shall be its duty to fix the salaries of all
the following named officers, to-wit: * * *
district clerk * * *. Each of said officers
shall be paid in money an annual salary in
twelve (12) equal installments of not less
than the total sum earned as compensation
by him in his official capacity for the fis-
cal year 1935, and not more than the maximum
amount allowed such officer under laws exist-
ing on August 24, 1935; * * * and provided

that in counties having a population of thirty-seven thousand five hundred (37,500) and less than sixty thousand (60,000) according to the last preceding Federal Census, and having assessed valuation in excess of Twenty Million ($20,000,000) Dollars, according to the last preceding approved tax roll of such county, the maximum amount allowed such officers as salaries, may be increased one (1%) per cent for each One Million ($1,000,000) Dollars valuation or fractional part thereof, in excess of said Twenty Million ($20,000,000) Dollars valuation over and above the maximum amount allowed such officer under laws existing on August 24, 1935. * * *"

As stated by you, Limestone County does not have a sufficiently large assessed tax valuation to avail an officer of the one (1%) per centum per million increases provided for in the bill and therefore said provision will not be noticed further.

It will be seen from reading the above-quoted portion of the act that it is the duty of the Commissioners' Court to fix the salary of the District Clerk within the following limits:

    1. Minimum: "***not less than the total sum earned as compensation by him in his official capacity for the fiscal year 1935."

    2. Maximum: "*** not more than the maximum amount allowed such officer under laws existing on August 24, 1935." (Section 13, Art. 3912c, supra).

In determining the application to be made to ascertain the minimum salary, we must interpret the meaning of the words "earned as compensation." Does this mean the fees actually collected by the officer for the year 1935, or does it contemplate the net fees earned, including both the fees actually collected and those which for any reason were uncollected?

The Officers' Salary Bill (of which Art. 3912c, supra, is a part) was passed by the Forty-fourth Legislature at its second-called session in 1935; as finally passed it was a conference committee report of Senate Bill No. 5.

In construing the statutory language "earned as compensation", the courts would be authorized to ascertain the legislative intent, and to so ascertain may consult any available source of information, especially referring to the legislative

history of an enactment. Grasso v. Cannon Ball Motor Freight Lines, (Com. App.) 81 S. W. (2d) 482. Reference may be made to legislative journals and records in order to ascertain the history of the passage of the act, to clarify it, or to disclose the intention of the law-making body. Red River Nat. Bank v. Ferguson, (Civ. App.) 192 S. W. 1088, affirmed 206 S. W. 923.

In undertaking the task of ascertaining the legislative intent as to the minimum salaries to be paid officers generally (district clerks included specifically), we have carefully examined the Senate Journal and the House Journal of the second-called session of the Forty-fourth Legislature.

We find Senate Bill No. 5 was originally introduced in the Senate by Senator DeBerry on October 23, 1935. It was referred to the Committee on State Affairs (Senate Journal, Forty-fourth Legislature, Second-called Session, 1935, p. 36); favorably reported (p. 44); considered, and amended in many respects (pp. 40, 47, 50, 51, 53, 62, 64, 65, 66, 69, 70, 72, 73, 74); passed to engrossment (p. 74); constitutional rule suspended, and finally passed (p. 74); engrossed (p. 86); received from House with amendments (p. 100); Conference Committee requested and named (p. 102); Conference reports (p. 432); Conference report adopted by Senate (p. 454); reported as adopted by House (p. 490); signed by President of Senate (p. 505); and enrolled (p. 506).

Among the Senate amendments recorded when the body was considering the bill, and before it was sent to the House, was the amendment to section 15 of the original bill, the purpose being to fix the salaries of named officers (including the District Clerk), submitted by Senator Davis, containing the following language:

"***Each of said officers and their deputies, assistants and clerks shall be paid in money in annual salary in twelve equal installments of not less than the total sum received as compensation by him in his official capacity for the fiscal year 1935, and not more than the maximum amount allowed such officer under general and special laws existing on August 24, 1935, * * *". (Senate Journal, supra, p. 64).

This amendment was adopted by a viva voce vote, as shown on the same page of the journal.

Senator Davis offered another amendment to strike out Section 17 of the bill and substitute another in lieu thereof, and the substitute was adopted. (p. 65, S. J.). Section 17 related to precinct officers as well as county officers. In the

substitute we find this language:

> "* * * shall pay unto each of said offi-
> cers or deputies, assistants and clerks in
> money an annual salary in twelve equal install-
> ments of <u>not less than the total sum received</u>
> as compensation by said officer, deputy, as-
> sistant and clerk in his said official capacity
> for the fiscal year 1935, and not more than the maxi-
> mum amount allowed such officer under existing gener-
> al and special laws; * * *".

On motion of Senator Deberry, both sections (15 and 17, partially quoted above), were further amended by striking out the words "and their deputies, assistants, and clerks", (p. 66, S. J.).

We find no further amendments to the above-quoted parts before the bill reached the House of Representatives. We do find statements we regard as significant in "Reasons for Vote" printed in the Journal by DeBerry after final passage in the Senate (p. 74, S. J.):

> "I voted for final passage of S. B. No. 5,
> realizing that it contained several objection-
> able features. * * * I also object to the sal-
> ary schedule in the bill, as I think it would
> be better to have provided that the salaries
> for the year 1936 be the same as <u>the total com-</u>
> <u>pensation received by these offices in 1935.</u>
> Beginning with the year 1937, I think the bill
> should have provided a fixed salary for each
> official, as nearly as possible to what they
> are now drawing.

> "It is my hope that in the Conference Com-
> mittee these and other faults can be taken out
> of the bill."

When the Senate Bill reached the House (House Journal, 44th Legislature, Second-called Session, p. 125) on October 30, 1935, it was later in the same day read first time and re-ferred to the Committee on Counties (p. 133), and favorably re-ported (p. 192). The bill was laid before the House in lieu of the House Bill (H. B. No. 52) on the same subject on Novem-ber 1, 1936 (p. 184), when Representative Knetsch offered an amendment to Senate Bill No. 5, same being H. B. 52, as a sub-stitute for the Senate Bill. The amendment (S. B. No. 5, su-pra), was variously amended (pp. 184 to 190 inclusive, none of which amendments were germane to the point we are investigat-ing), and was adopted in lieu of House Bill 52. (p. 190). It was then passed to third reading, the constitutional rule was



1465

suspended, and passed finally in the House. (p. 191). The Senate reported refusal to concur in the House amendments (p. 201), the House Conference Committee was appointed (p. 202); the Conference Committee made its report to the House (p. 455); was taken up and adopted by the House (pp. 484-485); the Senate reported adopted (p. 493), and it was duly signed by the Speaker of the House (p. 556).

We have carefully verified the above proceedings and ascertained the exact language of the bills as introduced in each House by inspecting the original papers on file in the office of the Secretary of State.

House Bill No. 52, as originally introduced provided the minimum and maximum salaries in section 8b thereof:

"* * * Each of said officers and their deputies, assistants and clerks shall be paid in money an annual salary in twelve equal installments of not less than the total sum received as compensation by him in his official capacity for the fiscal year 1935 and not more than the maximum amount allowed such officer under existing general and special laws."

In the original Senate Bill, as introduced by Senator DeBerry, the salary schedule was set up in brackets of counties classified according to population. This was section 15 of the bill introduced. It provided a range of from not less than Twenty-one Hundred ($2100.00) Dollars nor more than Three Thousand ($3000.00) Dollars in counties from twenty thousand to twenty-five thousand population, and in various population brackets increased the allowable salary to not less than five thousand ($5000.00) Dollars nor more than Sixty-five Hundred ($6500.00) Dollars as the absolute maximum in any event. It then contained this proviso:

"Provided, however, that the salaries to be fixed by the Commissioners' Court for the above named officers for the fiscal year beginning January 1, 1936, shall not be less than ninety (90%) per cent of the compensation earned, collected and retained by such officer for the fiscal year ending December 31, 1935, but in no event to exceed the maximum salary allowed under the provisions of Art. 3883 as amended by Chapter 220 of the General Laws of Regular Session of the 43d Legislature."

When the Conference Committee reported, it had discarded many of the features of both H. B. 52 and S. B. 5 and had written an entirely new bill. The language of Sec. 8b of the House

Bill and of section 15 of the Senate Bill, had disappeared altogether. Section 13 was devoted to the subject matter, and as submitted by the Conference Committee, adopted by both houses and signed by the Governor, is in exact language the same as section 13 of Article 8912a of Vernon's Civil Statutes. The language "not less than the <u>total sum earned as compensation</u> by him in his official capacity for the fiscal year 1935" appears for the first time in the Conference Committee report, which became the law. The words "total sum re-<u>ceived</u> as compensation" placed in section 15 by Senator Davis' amendment, were thus superseded. Also in section 17, relating to precinct officers, the words "earned as compensation earned by him", appear for the first time in lieu of Senator Davis' language, "not less than the total sum received as compensation by said officer", etc. Gone also was the language of old H. B. 52 "not less than the total sum <u>received</u> as compensation by him." The word "<u>received</u>" was changed to "<u>earned</u>". The legislative intent is thus subject to no possible dispute; they intended the word "<u>earned</u>" to be in the law rather than the word "<u>received</u>".

Webster's New International Dictionary, second edition, defines the word "earn":

> "To merit or deserve, as by labor or service; to do that which entitles one to (a reward, whether the reward is received or not);"

The same authority defines "receive":

> "To come into possession of, get, acquire, or the like from any source outside of oneself or itself."

And Webster says "compensation" means:

> "That which constitutes, or is regarded as, an equivalent or recompense; that which makes good the lack of variation of something else; that which compensates for loss or privation; amends; remuneration; recompense; as <u>compensation</u> to dispossessed owners".

In the case of Cone v. Gardner, 3 S. W. (2d) 1, at p. 3 the Supreme Court of Arkansas discusses the meaning of the word "compensation" and the following sentence appears:

> "Compensation, which is used in the sense of reimbursement, means either salary or fees, and it may also include expenses."

47.

From the foregoing, we are of opinion that as the statute was finally enacted it provides the officer shall be entitled to "not less than the total sum earned as compensation" rather than "sum collected" or "earned and collected", that in arriving at the correct minimum to be paid said officer, the Commissioners' Court should consider the sum total of both the fees collected and uncollected to which he would have been legally entitled for the year 1935.

We note your question as to whether ex-officio compensation paid in 1935 should be included in computing the minimum salary of the officer. Article 3895, R. C. S. 1925, provides for such ex-officio as follows:

"The Commissioners' Court is hereby debarred from allowing compensation for ex-officio services to county officials when the compensation and excess fees which they are allowed to retain shall reach the maximum provided for in this chapter. In cases where the compensation and excess fees which the officers are allowed to retain shall not reach the maximum provided for in this chapter, the Commissioners' Court shall allow compensation for ex-officio services when, in their judgment, such compensation is necessary, provided, such compensation for ex-officio services allowed shall not increase the compensation of the official beyond the maximum of compensation and excess fees allowed to be retained by him under this chapter. Provided, however, the ex officio herein authorized shall be allowed only after an opportunity for a public hearing and only upon the affirmative vote of at least three members of the Commissioners' Court."

Clearly, such ex-officio as was allowed and paid is within the meaning of the phrase "total sum earned as compensation."

You are therefore advised that the ex-officio salary paid an officer in 1935 should be taken into consideration in computing the minimum salary of such officer under the present law.

Your next question is whether the expenses for deputy hire, premium on surety bond, telephone and postage should be deducted from the total receipts of the office in computing the "total sum earned as compensation by him in his official capacity."

We again note the exact language of the act as finally passed:

"not less than the total sum earned as compensation by him in his official capacity for the fiscal year 1935."

The laws in force in 1935 affecting the compensation of officers are stated in Articles 3883, 3891 and 3895. The sum total of earnings under all three of said articles constituted the compensation of said officers. However, the county did not pay any of the authorized expenditures. Article 3891 provided otherwise:

"Each officer named in this Chapter shall first out of the current fees of his office pay or be paid the amount allowed him under the provisions of Article 3883, together with the salaries of his assistants and deputies, and authorized expenses under Article 3899, and the amount necessary to cover costs of premium on whatever surety bond may be required by law."

There was no provision of the statute guaranteeing the officer he should first receive the amount allowed under the provisions of Art. 3883, so the officer had to pay authorized expenditures out of the funds coming into his hands, irrespective of whether the amount mentioned in Art. 3883 was earned or collected. Therefore, the "total sum earned as compensation by him" was the net total earned after payment of his authorized expenses. The Legislature did not stipulate "earned by the office", but rather "earned by him."

We are of opinion, and you are so advised, that the Commissioners' Court should deduct from the total compensation earned, collected and uncollected, the expenses of the office for the year 1935 which were legally allowed by the Commissioners' Court for that year.

From the facts and figures furnished by you, we arrive at the minimum salary of the District Clerk of Limestone County:

```
Fees collected - - - - - - - - - - - - $2136. 38
Ex-officio salary- - - - - - - - - - -   900. 00
Fees earned but not collected- - - -     484. 44
     GROSS TOTAL EARNED- - - - - - - - $3520. 82
Deduct amount of authorized ex-
     penses- - - - - - - - - - - - - -   916. 75
                                       $2604. 07
```

We conclude the minimum figure at which the annual salary of the District Clerk of Limestone County can be set is Two Thousand Six Hundred Four Dollars and Seven Cents ($2,604.07).

We next consider the maximum salary of the officer in question and adverting to section 13 of Art. 3912e, supra, find the following:

"and not more than the maximum amount allowed such officer under laws existing on August 24, 1935;"

On the date mentioned the maximum sum permitted by law to be retained by the District Clerk in a county of your population bracket was Forty-two Hundred and Fifty Dollars ($4250.00), as set out in Chapter 327, General and Special Laws, Forty-fourth Legislature, Regular Session, p. 752 at page 753. This is present Article 3891, Vernon's R. C. S., effective May 18, 1935. Therefore, the maximum the court could set the salary would be Forty-two Hundred and Fifty ($4,250.00) Dollars.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Benjamin Woodall

Benjamin Woodall
Assistant

BW-HR

APPROVED:

ATTORNEY GENERAL OF TEXAS